UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MORAG J. BOND and NIGEL BOND,

                              Plaintiffs,

                              **DECISION AND ORDER**
        v.                              11-CV-275A


THE ROTHLANDS, LLC,
ROTHLAND GOLF COURSE, INC., and
UNITED STATES OF AMERICA,

                              Defendants.

-------------------------------------------------------------

SHEILA G. SCOTT and RICHARD SCOTT,

                              Plaintiffs,

                                            11-CV-593A

        v.


237 LINWOOD AVENUE, INC.,
COUNTY OF ERIE,
UNITED STATES OF AMERICA,
FRENSENIUS MEDICAL CARE
  HOLDINGS, INC., and
NEW YORK DIALYSIS SERVICES, INC.,
  individually and d/b/a FMS BUFFALO
  ARTIFICIAL KIDNEY CENTER,

                              Defendants.

_____

I.    INTRODUCTION

Pending before the Court in each of the above two cases are motions by all of the respective defendants to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP"). These cases are not related. In the interest of judicial economy, however, the Court has decided to issue a joint Decision and Order because these cases do have one legal issue in common that is central to all of the pending motions. That legal issue is whether a failure by the Medicare Secondary Payer ("MSP") system to issue a timely conditional payment letter creates federal jurisdiction over a negligence case that otherwise belongs in state court.

Plaintiffs in both cases—represented by the same counsel—argue that there is federal jurisdiction for two reasons. First, plaintiffs cite overwhelming frustration with Medicare's inability to follow its own policies and to decide in a timely fashion whether it will assert subrogation rights in any given negligence case. According to plaintiffs, Medicare takes so long to decide whether to assert subrogation rights—several years in some cases—that it holds up the final payments for cases that otherwise have settled. Plaintiffs argue that if Medicare intends on holding up settled cases than it ought to be a named defendant in federal court, which would force it to make faster decisions about its potential interests. Second, plaintiffs contend that the extraordinary delay that Medicare imposes on some litigants amounts to an unconstitutional taking of settlement

awards in violation of the Fifth Amendment.  All defendants counter with slightly different arguments that plaintiffs' frustration with the MSP system by itself does not create a case or controversy that a federal court can resolve.

The Court held a joint oral argument for all pending motions in both cases on November 4, 2011.  For the reasons below, the Court grants all of the pending motions and dismisses both cases for lack of subject-matter jurisdiction.

## II. BACKGROUND

### A. *Bond Case*

The Bond case concerns personal injuries allegedly sustained on an entrance/exit ramp at a golf course.  On June 18, 2010, Morag Bond ("Morag") visited the Rothland Golf Course in Akron, New York.  Although the complaint does not contain details, the Rothland Golf Course allegedly features a ramp at a passageway that serves as an entrance and exit to the restaurant and shop on the premises.  This ramp allegedly features "a sudden and dramatic drop/step" (Dkt. No. 1 ¶ 49) that did not announce itself through any special signage, lighting, or other warnings.  Morag reached the step without seeing it, falling down on the ramp and sustaining multiple injuries to her right knee and leg.  On March 28, 2011, Morag and her husband Nigel filed a complaint in federal court.  The complaint contained two causes of action.  In the first cause of action, Morag seeks compensation for negligence related to the step on the ramp.  Important to her argument, Morag does not seek recovery for medical expenses.  In the

second cause of action, Nigel seeks compensation for loss of consortium and services.

Morag's relationship to Medicare bears heavily on the pending motions to dismiss her case. Morag is a Medicare subscriber. As a Medicare subscriber, Morag reported her case and her primary health insurer's payments to the MSP system as required by 42 U.S.C. § 1395y(b)(7, 8), 42 C.F.R. § 411.25, and associated regulations. Morag did so even though she has submitted no claims to Medicare and has received no money from Medicare for injuries, a fact that the United States has since confirmed. (*See* Dkt. No. 12 ¶ 4 ("[Medicare's] records show no Medicare Part A or Part B reimbursement on behalf of Morag J. Bond for items or services on or after June 18, 2010 (the date of the alleged incident as stated in the complaint in this matter) through the date of this declaration.").) Medicare requires prompt reporting of new incidents and injuries because it is a secondary payer for medical expenses and has subrogation rights to recover expenses that a primary insurer ought to have paid. *See* 42 U.S.C. § 1395y(b)(2)(B)(iv) ("The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan."); 42 C.F.R. § 411.26(a) ("With respect to services for which Medicare paid, CMS [the Center for Medicare Services] is subrogated to any individual, provider, supplier, physician, private

4

insurer, State agency, attorney, or any other entity entitled to payment by a primary payer."). Medicare does not assert subrogation rights in a given case until a final award or settlement has occurred, at which point it sends a formal recovery demand letter to the recipient of the award or settlement. Meanwhile, however, Medicare sends a subscriber a "Rights and Responsibilities" letter as soon as the subscriber or the subscriber's primary insurer informs it of a new case. Under Medicare policy, Medicare is supposed to send the subscriber a "Conditional Payment Letter" automatically within 65 days of issuance of the Rights and Responsibilities letter. The Conditional Payment Letter lists Medicare payments made so far that are related to the injuries in question and can help litigants who are trying to set up a settlement or other final award.

Although the MSP system described above appears straightforward in design, Morag felt compelled to file her personal-injury case in federal court because the system does not function in practice. In practice, according to Morag, Medicare takes far longer than 65 days, sometimes years, to issue a Conditional Payment Letter. Meanwhile, personal-injury plaintiffs who are Medicare subscribers find themselves caught between Medicare and private insurers who are primary payers. Even when a case settles, private insurers refuse to issue any payments until they know whether Medicare will assert subrogation rights and for what amount. Private insurers take this position out of fear of being fined under 42 U.S.C. §§ 1395y(b)(7)(B)(i) and (b)(8)(E)(i), which

5

punish private insurers that fail to disclose what payments they have made to which people.  At the same time, Medicare refuses to make any commitments about asserting subrogation rights or about any amount of subrogation until private insurers make final payment.  The result of these various tensions is that a personal-injury case like Morag's can settle in principle but remain in suspended animation for years while private insurers and Medicare engage in a blinking contest.  On top of these tensions, Morag's counsel in particular takes the position in his practice that he cannot do anything to assist Medicare determine its subrogation rights because that would conflict with his duty to advocate for the largest possible recovery for clients like Morag.

    Morag and her counsel decided to bring their case here in an attempt to break through all of the tensions that affect personal-injury cases like hers. According to Morag, the United States is a necessary party to her case so long as Medicare insists on being the sole impediment to a final resolution.  By making the United States a defendant, Morag can force Medicare to make decisions about its subrogation rights more quickly.   Morag also can avoid a delay in final resolution of the case that runs so long that, in her view, it violates the Fifth Amendment by depriving her of a settlement without interest or other compensation.

    Defendants, particularly the United States, believe that Morag's approach to Medicare subrogation is all wrong and that this Court lacks jurisdiction to

preside over her case. Defendants argue that the underlying substance of Morag's case has nothing to do with the MSP system, meaning that the case does not "arise under" any federal law for purposes of 28 U.S.C. § 1331.[1] Defendants argue further that, to the extent that this case "arises under" Medicare statutes in particular, the United States has not waived sovereign immunity as expressed in 42 U.S.C. §§ 1395ii and 405(h).

**B.** *Scott Case*

The Scott case concerns personal injuries allegedly sustained at a dialysis center in Buffalo, New York. On November 3, 2010, plaintiff Sheila Scott ("Sheila") visited the FMS Buffalo Artificial Kidney Center at 237 Linwood Avenue in Buffalo. While there, Sheila fell on a ramp located at a passageway that serves as the entrance and exit to the premises. Sheila sustained multiple injuries to her right knee and right shoulder as a result of the fall. On August 10, 2011, Sheila and her husband Richard filed a complaint in federal court. The complaint contains two causes of action. In the first cause of action, Sheila accuses defendants of negligence related to the ramp and seeks compensation accordingly. Sheila does not seek recovery for medical expenses. In the second cause of action, Richard seeks compensation for loss of consortium and services related to Sheila's injuries.

---

[1] Plaintiffs concede that diversity jurisdiction does not exist in either case.

With respect to Medicare and federal jurisdiction, the parties raise the same arguments as arose in the Bond case, and the Court will not repeat them for the sake of brevity.[2]  The Court, however, will note one factual difference between Sheila's case and Morag's.  Medicare to date has not paid any medical expenses to Morag but has paid at least some of Sheila's medical bills.

## III.  DISCUSSION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "[W]e must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs.  We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citations omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citation omitted).  Plaintiffs here have

---

[2] Minor differences between Morag's and Sheila's Medicare status have no impact on the arguments from the parties or how the Court has chosen to address them.  As the United States has explained (Dkt. No. 19 at 2 n.1), Sheila receives benefits under Medicare Parts A and B while Morag is enrolled in a Medicare Advantage plan receiving benefits under Medicare Parts C and D.  This difference would lead to slightly different administrative remedies for each plaintiff in the event of a payment dispute with Medicare.

presented complex details about the MSP system and how it interacts with personal-injury litigation. The Court's first task, then, is to sift through those details and to clarify what is at stake right now in these cases. Right now, plaintiffs have not presented any dispute about the underlying substance of their cases. The Court does not have to resolve anything right now about negligence and duty of care generally, or about exit ramp construction and maintenance specifically. Stripped to the core, these cases present a single legal question: Can the Court assert jurisdiction over an otherwise ordinary negligence case solely because the MSP system does not operate as designed?

Finding the answer to the above question requires a brief review of the principles of federal-question jurisdiction. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When determining what "arising under" means in any given context, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).[3] "In determining whether the

---

[3] The Court is not ignoring the United States's argument about 42 U.S.C. §§ 1395ii and 405(h). Those statutes, however, use the same phrase "arising under" and are more narrow in scope. Logically, if plaintiffs' negligence claims do not "arise under" *any* federal law for purposes of 28 U.S.C. § 1331 then they necessarily do not arise under these specific statutes either.

complaint presents a federal question, the court must examine it in accordance with the well-pleaded complaint rule . . . . [T]his rule states that federal jurisdiction must be found from what necessarily appears in the plaintiff's statement of his own claim . . . , unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 192 (2d Cir. 1987) (second ellipsis in original) (internal quotation marks and citations omitted).

      Here, plaintiffs have not presented any information that would satisfy their burden of establishing subject-matter jurisdiction. Each complaint contains two state-level, common-law causes of action—one for negligence and one for loss of services. The injuries claimed allegedly arose because of defective ramp design and maintenance, not because of the MSP system. *Cf. Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action."). If these cases proceeded to trial then jurors would vote whether plaintiffs established, by a preponderance of the evidence, that defendants created or maintained defective ramps in a way that breached a duty of care and that proximately caused damages. The jurors would not need to look at any Medicare statute when reaching their verdicts and would not need to pay any attention to how the MSP system operates. In fact, unless an exception applied, Federal Rule of Evidence 411 would forbid the parties from discussing insurance coverage in front of the jurors. *See* Fed. R. Evid. 411 ("Evidence that a

person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."). Plaintiffs' accusations of negligence and claims of injuries thus do not arise under any federal law and do not confer subject-matter jurisdiction on this Court. *Cf. Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809–10 (1986) ("This case does not pose a federal question of the first kind; respondents do not allege that federal law creates any of the causes of action that they have asserted. This case thus poses what Justice Frankfurter called the 'litigation-provoking problem,' the presence of a federal issue in a state-created cause of action.") (citation omitted).

Without subject-matter jurisdiction, the Court will dismiss these cases. Plaintiffs had asked in the alternative for a transfer to state court under 28 U.S.C. 1406(a). Section 1406(a), however, is unavailable when the Court lacks subject-matter jurisdiction. *See Atl. Ship Rigging Co. v. McLellan*, 288 F.2d 589, 591 (3d Cir. 1961) ("Where, as here, the court lacks jurisdiction over the subject matter, which is a more fundamental defect than an absence of in personam jurisdiction, and one which precludes it from acting at all, a fortiori a court lacks power to transfer."); *Friedman v. Revenue Mgmt. of N.Y., Inc.*, 839 F. Supp. 203, 206–07 (S.D.N.Y. 1993) ("Because I ruled that federal courts do not have subject matter jurisdiction over the Dissolution Counts, part of the Complaint must proceed, if at all, in the New York State Courts.") (citation omitted). Another provision of the

11

Judiciary Code, 28 U.S.C. § 1631, does allow transfers in the interest of justice to cure jurisdictional defects. "Section 1631 does not, however, provide for the transfer of this action to a state court. Both the statutory language and the legislative history show that this provision was directed to the federal court system." *McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 429 (3d Cir. 1983).

In concluding that dismissal is necessary, the Court understands plaintiffs' frustration that the MSP system may delay closure and final payment in their cases for months or years. Taking at face value his representations about the difficulties of navigating the MSP system, plaintiffs' counsel has described a bureaucracy that not only delays justice for his injured clients but also has enough size and inertia not to care about those delays. Without taking any positions on these issues, counsel may yet have a federal remedy for his frustration through mandamus proceedings or the political process. *See, e.g.*, Strengthening Medicare and Repaying Taxpayers Act of 2011, H.R. 1063, 112th Cong. § 2 (Mar. 14, 2011) (proposing a new clause in 42 U.S.C. § 1395y(b)(2)(B) that would waive Medicare subrogation rights automatically if Medicare took too long to furnish a conditional payment letter). This Decision and Order means only that a complaint filed and served because of a defective ramp cannot act as the vehicle for a tangential policy discussion about Medicare subrogation.

## IV. CONCLUSION

For all the foregoing reasons, the Court rules as follows:

1) In Case No. 11-CV-275, the Court grants both motions to dismiss (Dkt. Nos. 9, 14) and dismisses the complaint in its entirety for lack of subject-matter jurisdiction. The Clerk of the Court shall close this case.

2) In Case No. 11-CV-593, the Court grants all three motions to dismiss (Dkt. Nos. 11, 18, 26) and dismisses the complaint in its entirety for lack of subject-matter jurisdiction. The Clerk of the Court shall close this case also.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: December 7, 2011